UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UBALDO FIGUEROA, an individual, on behalf of himself, and on behalf of all persons similarly situated,

Plaintiff,

vs.

CONNER LOGISTICS, INC., a California Corporation; and Does 1 through 50, inclusive,

Defendants.

Case No. 1:19-cv-01004-NONE-BAM

**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

(Doc. No. 36)

On December 18, 2020, Plaintiff Ubaldo Figueroa ("Plaintiff"), an individual, on behalf of himself, and on behalf of all persons similarly situated, filed a Motion for Final Approval of Class Settlement. (Doc. No. 36.) The matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A), Local Rule 302, and the Standing Order in Light of Ongoing Judicial Emergency in the Eastern District of California. (*See* Doc. No. 18-1.)

The motion came before the Court for hearing on January 15, 2021. Counsel Kyle Nordrehaug appeared by Zoom video on behalf of Plaintiff. Counsel Russell Ryan appeared by Zoom telephone on behalf of Defendant Conner Logistics, Inc.

Having considered the briefing, the arguments of counsel, and the record in this case, the Court will recommend that the motion be granted.

## I. BACKGROUND

This is a hybrid wage-and-hour case alleging both a collective action under the Fair Labor

Standards Act ("FLSA") and a Federal Rule of Civil Procedure 23 class action as to state law claims. Defendant is a trucking company. Plaintiff worked for Defendant as a truck driver from May 2014 through September 2014. The operative second amended complaint, filed on June 21, 2019, alleges that Defendant: (1) engaged in unfair competition; (2) failed to pay minimum wages; (3) failed to provide accurate itemized wage statements; (4) failed to provide wages when due; (5) violated the Private Attorneys General Act ("PAGA") of 2004 (i.e., California Labor Code § 2698 et seq.), and (6) failed to pay straight and overtime compensation in violation of the FLSA. (Doc. No. 1-1 at Ex. A.) On July 23, 2019, the matter was removed to this Court from the Superior Court of the State of California, County of Fresno. (Doc. No. 1.)

The parties agreed to settlement of all claims following private mediation with Judge Howard Broadman (ret.) and subsequent negotiations. The settlement agreement proposes a total payment of $205,000 to be allocated as follows: up to $18,000.00 in settlement administration; a $10,000 enhancement payment to the named plaintiff; attorneys' fees up to 25% ($51,250.00); litigation costs and expenses up to $15,000; and $1,537.50 to the Labor Workforce Development Agency ("LWDA") from the PAGA payment of $2,050.00. (Doc. 36-2, Ex. 2 to Declaration of Norman Blumenthal ("Blumenthal Decl."), Joint Stipulation of Class Action Settlement and Release of Claims ("Settlement Agreement") at ¶¶ II.X, II.HH; VI.; VII.) After subtracting the litigation costs, attorneys' fees, enhancement payment, settlement administration costs, and the LWDA payment, the remaining settlement fund ("Net Settlement Amount") will be allocated to participating class members. (*Id.* at II.V.)

The settlement share for each participating class member will be calculated by (1) calculating the total weeks worked by all Participating Class Members based on the Class Data (the "Total Work Weeks"); (2) dividing each Participating Class Member's work weeks based on the Class Data by the Total Work Weeks to determine his or her proportionate share of the Net Settlement Amount (for each Participating Class Member, the "Settlement Share Proportion"); and (3) multiplying each Participating Class Member's Settlement Share Proportion by the Net Settlement Amount. Additionally, participating class members who are FLSA opt-in members will receive an increase of 10% as to their work weeks in the calculation of their Settlement Share

Proportion. Settlement checks shall remain valid for 180 days from the date of issue. If the check of a Participating Class Member remains uncashed, the funds from such uncashed checks will be paid to the California Controller's Unclaimed Property Fund in the name of the Participating Class Member. (Doc. 36-2, Blumenthal Decl. at ¶ 3(c).)

On March 13, 2020, Plaintiff moved for preliminary approval of the settlement. The Court held a hearing on the motion and requested supplemental briefing to address the proposed settlement of the FLSA claim, along with clear identification of the proposed settlement administrator and the settlement administrator's related duties. (Doc. No. 26.) Plaintiff filed supplemental briefing on July 6, 2020, which addressed the issues identified by the Court and included information regarding the proposed service award of $10,000. (Doc. No. 27.)

On July 10, 2020, the Court issued findings and recommendations regarding preliminary approval of the class action settlement. (Doc. No. 28.) An order adopting the findings and recommendations issued on August 7, 2020. By its approval, the Court: (1) preliminarily approved the settlement; (2) conditionally certified the class; (3) certified the FLSA collective action for settlement purposes; (4) appointed Plaintiff Ubaldo Figueroa as representative for the class and FLSA collective; (5) appointed Blumenthal, Nordrehaug & Bhowmik as class counsel; (6) approved the Class Notice and FLSA Consent Form; (7) directed that notice be disseminated pursuant to the terms of the settlement; (8) preliminarily approved the proposed procedure for class members to request exclusion and object to the settlement; and (9) set a final fairness hearing. (Doc. No. 32.) The settlement class was defined as: all individuals who were California residents who worked for Defendant, Conner Logistics, Inc. in California as truck drivers at any time during the Class Period. The Class Period is August 11, 2011 through July 11, 2016. (Doc. No. 28 at 2-3.)

On October 20, 2020, the Court approved the parties' stipulation to change the settlement administrator to ILYM Group. (Doc. No. 34.) On the same date, the Settlement Administrator received the Court-approved text for the Notice Packet from Class Counsel. The Settlement Administrator also received a class data file from defense counsel, which contained the name, social security number, last known mailing address, and the total number of applicable

workweeks worked for each Settlement Class member. The data list contained information for 90 individuals. (Doc. No. 36-3, Declaration of Madely Nava ("Nava Decl.") at ¶¶ 4-5.)

On October 30, 2020, after conducting a National Change of Address search, the Settlement Administrator mailed the Notice Packet to the class members. (*Id.* at ¶¶ 6-7.) As of the date of the motion, five notice packets remained undeliverable. (*Id.* at ¶ 10.) The Settlement Administrator did not receive any objections or requests for exclusion from any class members. (*Id.* at ¶¶ 11-12.) No objectors appeared at the hearing on the motion for final approval of the class and collective action settlement.

On December 18, 2020, Plaintiff filed the instant motion for final approval of the class and collective action settlement. (Doc. No. 36.) According to the motion, all 90 class members will be deemed to be participating members who will be paid their portion of the net class settlement amount. Additionally, 24 FLSA members will be participating members. The net class settlement amount is estimated to be $112,268.70 for distribution, the highest gross class payment is estimated to be $4,816.93, and the average gross class payment is estimated to be $1,247.43. (Doc. No. 36-3, Nava Decl. at ¶¶ 13-15.)

## II. <u>LEGAL STANDARD</u>

Class actions require court approval prior to settlement. Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."). A proposed class action settlement may be approved if the Court, after class members have an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009). The Ninth Circuit has identified a non-exhaustive list of factors that a district court may consider when assessing whether a class action settlement agreement meets this standard: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of the class members to the proposed settlement. *Rodriguez*, 563 F.3d at 963.

"[S]ettlements of collective action claims under the FLSA also require court approval." *Nen Thio v. Genji, LLC*, 14 F.Supp.3d 1324, 1333 (N.D. Cal. 2014). When confronted with a motion to settle an FLSA claim, the court "must determine whether the settlement is a fair and reasonable resolution of a bona fide dispute. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute, the district court may approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.* (internal punctuation and citations omitted). If there is a bona fide dispute about the defendant's liability under the FLSA, then the Court should consider the relevant Rule 23 factors to determine whether to approve the FLSA settlement. *Milburn v. PetSmart, Inc.*, No. 1:18-cv-00535-DAD-SKO, 2019 WL 1746056, *4 (E.D. Cal. Apr. 18, 2019).

**III. DISCUSSION**

**A. Bona Fide Dispute**

The motion does not separately address whether there was a bona fide dispute as to the FLSA claim. However, when addressing the factors for approval of a class settlement, the motion indicates that Defendant asserted defenses that presented serious threats to the claims, asserted that its employment practices complied with all applicable labor laws, asserted facts that could negate essential elements of Plaintiff's claims, and argued that federal law preempted Plaintiff's claims. Plaintiff and Class Counsel believed that Defendant's defenses could be overcome. (Doc. No. 36-1 at 23.) As Defendant contested its liability under the FLSA, the Court is satisfied that there is a bona fide dispute at issue. *See Castro v. Paragon Industries, Inc.*, No. 1:19-cv-00755-DAD-SKO, 2020 WL 1984240, at *12 (E.D. Cal. Apr. 27, 2020) (bona fide dispute found where defendant contended it had complied with the FLSA's minimum wage and overtime compensation requirements) (and cases cited therein).

**B. Rule 23 Factors**

1. The Strength of Plaintiff's Case

Plaintiff explains that in advance of settlement negotiations and mediation, Class Counsel conducted a "thorough investigation into the facts of the class action, including a review of

relevant documents and data and a diligent investigation of the Class Members' claims against Defendant." (Doc. No. 36-1 at 22.) Class Counsel also retained a damage valuation expert in advance of mediation. Plaintiff indicates that the parties and their counsel recognize that, in the absence of an approved settlement, they would face protracted litigation, including a contested motion for certification, motions for summary judgment, and trial and appellate proceedings that would consume time and resources and present litigation risks. (*Id.*)

The Court finds that the factor relating to the strength of Plaintiff's case weighs in favor of approval of the settlement.

2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

The motion explains that Defendant asserted a number of defenses that presented serious threats to the claims at issue. For instance, Defendant asserted that the employment practices complied with all applicable labor laws and that drivers recorded their own time. Defendant also argued that when required, rest break premiums were paid, and the decision in *Brinker v. Superior Court*, 53 Cal. 4th 1004 (2012), weakened Plaintiff's claims on liability value and class certification. Additionally, Defendant asserted facts that could negate essential elements of Plaintiff's claims. Defendant contended, for example, that its truck drivers were able to take meal and rest breaks because they controlled their own schedules. Defendant further contended that federal law preempted Plaintiff's claims. Plaintiff indicates that there could be significant problems of proof regarding the extent to which class members missed breaks. Plaintiff avers that if successful, Defendant's defenses could eliminate or substantially reduce recovery. Although Plaintiff believes these defenses could be overcome, Defendant maintain that these defenses have merit and present a risk to recovery.

In addition, Plaintiff reports that Defendant provided tax documents and other information showing that Defendant lacked the financial ability to pay a significant judgment. Plaintiff asserts that continued prosecution of the claims could have resulted in the class recovering little or nothing. Plaintiff also claims that there was significant risk if the action was not settled, then Plaintiff would be unable to obtain class certification and maintain a certified class through trial. At mediation, Defendant opposed the propriety of class certification and it would have been hotly

contested.

Plaintiff and Class Counsel reportedly recognize the expense and length of continuing to litigate this action through possible appeals that could take several years. Class Counsel also has considered the uncertain outcome and risk of litigation, recognizing the inherent problems of proof and the asserted defenses. Plaintiff and Class Counsel have determined that the settlement is in the best interest of the class.

In light of these circumstances, the Court finds that settlement provides a substantial and immediate benefit to the class and the collective which is "preferable to lengthy and expensive litigation with uncertain results." *Morales v. Stevco, Inc.*, 2011 WL 5511767, at *10 (E.D. Cal. Nov. 10, 2011).

3. <u>The Amount Offered in Settlement</u>

The parties have agreed to settle this action for a Gross Settlement Amount of $205,000. According to Plaintiff, the total damage valuation in this action was $919,096, and the settlement amount is approximately 22% of the value of the damages at issue in this case. (Doc. No. 36-1 at 19-20; Doc. No. 36-2, Blumenthal Decl. at ¶ 7(d).)

Class Counsel indicates that the Gross Settlement Amount is equivalent to approximately $82 per workweek and the Net Settlement Amount provides an average recovery of more than $1,100 per Class Member ($43 per workweek). (*Id.*) Class Counsel believes this compares favorably to similar class settlements on behalf of truck drivers. Class Counsel reportedly has been involved in recent class settlements involving similar claims on behalf of truck drivers which provided average net recoveries as follows: May Trucking - $431 per person ($50 per work week); Navajo - $691 per person ($36 per workweek); Gardner - $993 per person ($27.50 per workweek), A&I Transport - $955 per person ($14.20 per workweek); Core-Mark - $877 ($12.50 per workweek); Estenson - $835 per person ($9.30 per workweek); and, New Prime - $209 per person ($20 per workweek). (*Id.*)

"[C]ourts that have approved settlements releasing both FLSA and Rule 23 claims generally do so only when the parties expressly allocate settlement payments to FLSA claims." *See Thompson v. Costco Wholesale Corp.*, 2017 WL 697895, at *8 (S.D. Cal. Feb.22, 2017).

Here, members who have agreed to release their FLSA claims will receive a 10% increase of their settlement share. (Doc. No. 36-2, Blumenthal Decl. at ¶7(f).)

The Court finds that this factor weighs in favor of approval of the settlement.

4. The Extent of Discovery Completed and the Stage of the Proceedings

The settlement was reached after informal and formal discovery, private mediation and subsequent negotiations. Class Counsel investigated the facts of the case by reviewing relevant documents and data and conducting an independent investigation. The parties reportedly exchanged information regarding the number of possible class members and Defendant's payroll and employment information for the class, including internal documents, tax documentation, wage statements, earnings and other compensation and employment-related materials. (Doc. 36-2, Blumenthal Decl. at ¶¶ 6(d), (e).) Plaintiff believes that the investigations by counsel were more than sufficient to give them a sound understanding of the merits of their positions and to evaluate the worth of the claims in light of the asserted defenses. (*Id.* at ¶ 6(e).) Class Counsel also retained a damage valuation expert in advance of mediation.

The Court finds that consideration of this factor likewise weighs in favor of approval of the settlement. *See Rodriguez v. Danell Custom Harvesting, LLC*, 327 F.R.D. 375, 388 (E.D. Cal. 2018) ("The fact that the parties believe they engaged in sufficient discovery to weigh the merits of the action and engaged the services of a professional mediator in settling the action weighs in favor of approving the class action settlement.")

5. The Experience and Views of Counsel

In determining whether a settlement is fair and reasonable, the Court is to accord great weight to the recommendation of counsel because they are aware of the facts of the litigation and in a better position than the court to produce a settlement that fairly reflects the parties' expected outcome in the litigation. *Rodriguez*, 327 F.R.D. at 388–89. Class Counsel is experienced in class actions, including labor and employment litigation, wage and hour class actions, representative PAGA actions and complex litigation. Class Counsel has concluded the settlement is fair, adequate and reasonable and in the best interests of the class. (Doc. No. 36-1 at 21.) This factor accordingly weighs in favor of approval of the settlement.

6. The Reaction of the Class Members to the Proposed Settlement

The response by the class has been positive. There are no objections and no requests for exclusion. The absence of any objections is compelling evidence that the settlement is fair, adequate and reasonable. *Rodriguez*, 327 F.R.D. at 389; *see Bolton v. U.S. Nursing Corp*., 2013 WL 5700403, at *2, *4 (N.D. Cal. Oct. 18, 2013) (approving settlement where no objections filed, and one of 2,765 class members requested exclusion from settlement).

7. Arm's Length Negotiation and the Absence of Collusion

"Where a class action is settled prior to class certification, the Court must also consider whether there is evidence of collusion or other conflicts of interest before approving the settlement." *Rodriguez*, 327 F.R.D. at 389 (citing *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946 (9th Cir. 2011)). Examples of signs that a settlement is the product of collusion include "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds ...; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (quoting *In re Bluetooth*, 654 F.3d at 947).

Here, the settlement was presented to the Court only after the parties had engaged in private mediation with Judge Howard Broadman (ret.). The matter did not settle at mediation and the parties engaged in further negotiations and arms-length discussions spanning another nine months. (Doc. No. 36-2, Blumenthal Decl. at ¶ 6(g).) There is a low possibility of fraud or collusion. Notably, Class Counsel is seeking 25% of the common fund in fees, which is the acceptable benchmark for attorneys' fees, and the class is receiving a monetary benefit. Second, there is no clear sailing arrangement for the payment of attorneys' fees. (Doc. 36-2, Ex. 2 to Blumenthal Decl., Settlement Agreement at ¶ XIV, C.) Third, and finally, unawarded fees do not revert to Defendant.

Upon consideration of the totality of the circumstances, the Court finds that the settlement is the result of an arm's length negotiation and there is no evidence of collusion or other conflicts

of interest.

**C. Settlement Administrator Fees/Expenses**

As noted above, the Settlement Agreement allocated up to $18,000.00 from the Gross Settlement Amount for payment of costs and expenses due to the Settlement Administrator for administration of the Settlement. (Doc. No. 36-2, Settlement Agreement at ¶ VII.) ILYM Group's total fees and costs for services in connection with the administration of the Settlement total $14,9144.30. (Doc. No. 36-3, Nava Decl. at ¶ 16.) The Court finds this amount, which is less than that allocated by the Settlement Agreement, fair and reasonable.

**IV. <u>CONCLUSION AND RECOMMENDATION</u>**

Based on the foregoing, IT IS HEREBY RECOMMENDED that Plaintiff's Motion for Final Approval of Class Settlement (Doc. No. 36.) be GRANTED, subject to the following findings:

1. All terms used herein shall have the same meaning as defined in the set forth in the Joint Stipulation of Class Settlement and Release of Claims ("Settlement");

2. This Court has jurisdiction over this action and the Settlement;

3. With respect to the Settlement Class and for purposes of approving this Settlement only, this Court finds that: (a) the members of the Settlement Class are ascertainable and so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the Settlement Class, and there is a well-defined community of interest among members of the Settlement Class with respect to the subject matter of the Action; (c) the claims of Plaintiff are typical of the claims of the members of the Settlement Class; (d) a class action is superior to other available methods for an efficient adjudication of this controversy; and (e) the counsel of record for Plaintiff, Blumenthal, Nordrehaug & Bhowmik, are qualified to serve as counsel for the Settlement Class. The Settlement Class is hereby defined to include: all individuals who were California residents who worked for Defendant, Conner Logistics, Inc. in California as truck drivers at any time during the Class Period. The Class Period is August 11, 2011 through July 11, 2016;

4. The Court finds that a bona fide dispute between the parties exists with respect to

the FLSA.

5. The Court recommends that Blumenthal, Nordrehaug & Bhowmik be confirmed as counsel for the Settlement Class and FLSA Members ("Class Counsel"), and Plaintiff Ubaldo Figueroa be confirmed as representative of the Class;

6. The Notice of Pendency of Class Action Settlement and Hearing Date for Court Approval ("Class Notice") and the FLSA Consent Form that were provided to the settlement class and FLSA members fully and accurately informed them of the terms of the settlement, their right to receive a Settlement Share, their right to comment on or object to the Settlement and/or the attorneys' fees and costs, their right to elect not to participate in the Settlement and pursue their own remedies, and their right to appear and person or by counsel at the final approval hearing and be heard regarding approval of the Settlement.

7. The Court finds and determines that this notice procedure afforded adequate protections to class members and provides the basis for the Court to make an informed decision regarding approval of the settlement based on the responses of Class Members. The Court finds and determines that the notice provided in this case was the best notice practicable, which satisfied the requirements of law and due process. No Class Members filed written objections and no Class Members requested exclusion from the Settlement.

8. The Court recommends that final approval of the Settlement be granted and finds that the Settlement is fair, reasonable and adequate, and in the best interests of the Class Members and FLSA Members as a whole. More specifically, the Court finds that the Settlement was reached following meaningful discovery and investigation conducted by Class Counsel; that the Settlement is the result of serious, informed, adversarial, and arms-length negotiations between the parties; and that the terms of the Settlement are in all respects fair, adequate, and reasonable. In so finding, the Court has considered all of the evidence presented, including evidence regarding the strength of the Plaintiff's case; the risk, expense, and complexity of the claims presented; the likely duration of further litigation; the amount offered in the Settlement; the extent of investigation and discovery completed; and the experience and views of Class Counsel. The Court has further considered the absence of any objections or requests for exclusion.

9. The Court finds and determines that the Gross Settlement Amount of $205,000 and the Settlement Shares to be paid to the Participating Class Members are fair and reasonable. The Court recommends payment of those amounts be distributed to the Participating Class Members out of the Net Settlement Amount in accordance with the Settlement. Pursuant to the terms of the Settlement, the Court recommends that the Settlement Administrator be directed to make payment to each Participating Class Member in accordance with the Settlement.

10. The Court finds that the fees and expenses of ILYM Group in administering the settlement, in the amount of $14,994.30, are fair and reasonable. The Court recommends granting final approval to and ordering that the payment of that amount be paid out of the Gross Settlement Amount in accordance with the Settlement.

11. The Court finds the PAGA Payment in the amount of $2,050.00 fair and reasonable. The Court recommends that the PAGA Payment be allocated in accordance with the Settlement.

12. The Court recommends that any person who is a Participating Class Member of the Class who does not opt-out shall be deemed to have fully and finally released Defendant and all of the other Released Parties, and each of them, from any and all Claims during the Class Period ("Released Class Claims").

13. The Court recommends entry of final judgment;

14. After entry of an order adopting these findings and recommendations, the Court shall retain jurisdiction as to all matters relating to the interpretation, administration, implementation, effectuation and enforcement of the Settlement and the order adopting these findings and recommendations; and

15. The Court recommends dismissal of this action, with prejudice, each side to bear its own costs and attorneys' fees except as provided by the Settlement Agreement or other order of the Court.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendations, the parties may file

written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 19, 2021**

/s/ Barbara A. McAuliffe
UNITED STATES MAGISTRATE JUDGE